## BEQUEST OF INTEREST IN LIFE INSURANCE POLICY WITHOUT ABATEMENT FOR PREMIUMS.

[Circuit Court of Fairfield County.]

JACOB CLAYPOOL ET AL v. JOHN R. CLAYPOOL, ADMINISTRATOR.

Decided, October Term, 1903.

*Wills—Bequest of Interest in Life Insurance—Not Subject to Set-off on Account of Premiums Paid—Where the Testator Declared by Codicil—That the Bequest was Without Abatement for Such Premiums—Statutes of Descent and Distribution Not Applicable.*

Where a testator bequeaths to the children of his deceased wife all interest which he has in a policy of insurance assigned by him to her in her lifetime, and the bequest is made "without abatement on account of premiums heretofore or hereafter paid by me on account of that policy," such payments of premiums can not be set-off against a note executed by the decedent and held by the estate of his wife, notwithstanding the interest in said policy and by virtue of the payment of said premiums which would inure to him under the statutes of descent and distribution.

McCARTY, J.; VOORHEES, J., and WINCH, J. (sitting in place of Donahue, J.), concur.

Error to the Court of Common Pleas of Fairfield County.

This case arose in the probate court and was afterwards appealed to the court of common pleas. The proceeding in the probate court was brought under the statute (Section 6100, Revised Statutes), for the allowance of a claim on a promissory note given by Isaac Claypool in his lifetime for the sum of $850 and interest in favor of Sarah A. Claypool, his wife, in her lifetime.

An answer was filed in this case which raises some issue as to the validity of the indebtedness on the note, and as to the question of the alleged set-offs that are sought to be interposed against the note arising from payments of annual premiums on the policy of insurance which Isaac Claypool assigned to his wife.

The situation from which this whole controversy arose was substantially as follows: In 1866 Isaac Claypool caused to be

issued on his own life payable to himself, his executors or administrators, a $10,000 life insurance policy. That policy was drawn under the old form of drawing policies of insurance then existing, which provided that on failure to pay the annual premiums the policy would lapse. After some years Isaac Claypool married Sarah A. Claypool, and in 1883 he assigned to her this policy of insurance by a written instrument which conveyed to her, her executors, administrators and assigns this insurance policy. Sarah A. Claypool died about 1892 and Isaac Claypool died in 1902. The old gentleman kept up the premiums until he died—a period of about ten years. Had the premiums not been paid at the expiration of any one year, the policy would have lapsed. In this proceeding, which was instituted in the probate court, and afterwards came to the common pleas court, it was sought to recover from the claim made against his estate on the promissory note, the amount of those premiums paid during the period that lapsed from the death of Sarah A. Claypool to the death of Isaac Claypool, amounting in the aggregate to the sum of $2,300. And the claim is made that if these items had not been paid in his lifetime that the policy would have lapsed, and he therefore paid them for the benefit of his own estate, and that these payments made by him after the death of his wife should operate as a set-off to the note, and also that whatever surplus there was between the payments made by him on those premiums and the amount of the note should be ordered to be paid to his estate by the estate of Sarah A. Claypool.

That brings us to the question as to whether those payments are proper items of set-off; and I may say in passing that there is some serious question as to whether, under the assignment made by Isaac Claypool to his wife of this policy—under that written assignment—whether he did not bind himself to keep that policy alive. That question, however, is not before us, and we need not determine it, nor discuss it at all.

Some time after the death of his wife, Isaac Claypool made what is denominated and treated here as a second codicil to his will, and it is contended that has some effect in determining

this suit; in other words, that if Isaac Claypool, by virtue of the statutes (Section 4176, Revised Statutes), in that behalf made, is entitled, or his estate is entitled, to recover from the estate of Sarah A. Claypool by virtue of the statutes of descent and distribution, to-wit, one-half of the first $400, and one-third of the balance of the personal property, whether he did not deprive himself, of that by making a subsequent codicil, or second codicil to his will, and whether he did not give that part of his property to certain parties therein named as beneficiaries.

I want to call attention first to the assignment of this policy to his wife. It is contended that he having assigned the policy to his wife, had no longer any interest in it; and secondly, it is contended that if he had any interest in it by virtue of the statutes of descent and distribution (Section 4176, Revised Statutes), which came to him from the estate of his wife, that he released it by the second codicil to his will. I want to call attention to those two instruments. The assignment reads as follows:

"For one dollar to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged), I hereby assign, transfer and set over to Sarah A. Claypool of Lancaster, O., all my right, title and interest in this policy No. 51254 issued by the Mutual Life Ins. Co. of New York, and for the consideration above expressed, I do also for myself, my executors and administrators guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, her executors, administrators and assigns, and their title to said policy will forever warrant and defend.

"Dated in Lancaster, Ohio, this twenty-fourth day of January, 1883.

"(Signed)                           ISAAC CLAYPOOL."

Under this assignment, which conveyed to the wife this policy of insurance, it is contended that at the death of the wife, she being possessed of this policy, that whatever belonged to her at the time of her death would inure under the statutes of descent and distribution to her husband who survived her. Assuming for the moment that that would be the situation, this

would be the right of Isaac Claypool to his distributive share in his wife's property, namely, that he would, under the statutes, receive one-half of the first $400 and one-third of the balance on final distribution.   Then what comes next, if that be true?   We think this provision in his will—this codicil that I have called attention to—completely, carefully and we might say effectually, takes care of any further questions in this case. Codicil number two is as follows:

"Whereas, I, Isaac Claypool, on the 9th day of July, 1895, made my last will and testament of that date, do hereby declare the following to be a codicil to the same:

"Whereas, on the seventh day of September, 1866, I obtained a policy of insurance of that date, No. 51254 for the sum of $10,000 on my own life; and afterwards on the twenty-fourth day of January, 1883, duly assigned and delivered said policy to my then wife, Sarah A. Claypool, since deceased, due notice of said assignment having been given to said company.   My belief and intention were and are that her children herein named would succeed to and inherit her interest in said policy.   Now to avoid any question or trouble, I hereby ratify said assignment, and furthermore I do hereby give and devise said policy and the moneys therein assured to all the children of said Sarah A. Claypool share and share alike, namely, Frank P. Claypool, John R. Claypool and Ada M. Creighton, without abatement or account for premiums heretofore or hereafter paid by me on account of that policy, and this provision is additional to the devises made in the foregoing will."

Now let me read a portion of that again:

"My belief and intention were and are that her children herein named would succeed to and inherit her interest in said policy.   Now to avoid any question or trouble, I hereby ratify said assignment, and furthermore I do give and devise said policy and the moneys therein assured to all the children of said Sarah A. Claypool share and share alike, namely, Frank Claypool, John R. Claypool and Ada M. Creighton."

It seems to the court that this effectually disposes of all the questions that are in the case; not only the question as to the payment of the premiums that are sought to be charged to the estate of his wife, that come to his estate, but all other interests

that he might have in this policy, including the payments of those premiums that were made by him to keep the policy alive. He says so in unmistakable terms, and I want to observe that this codicil was very carefully drawn. It seems to the court to express every word that ought to be in it; nothing is omitted to cover the intention of the old gentleman in making the codicil. It is well known to the bar generally that the intention of the testator is to be gathered from the four corners of the will. He meant what he said.

"My belief and intention were and are that her children" (naming them) "would succeed to and inherit her interest in the policy. Now to avoid any question or trouble, I hereby ratify said assignment, and furthermore I do hereby give and devise said policy and the moneys therein assured to all the children of said Sarah A. Claypool share and share alike."

He gives all the interest he had in that policy by virtue of his estate that would come to him on the death of his wife under the statutes of Ohio. That disposes of the policy, and that disposes of the interest he had in his wife's estate in the policy. He says furthermore:

*   *   *   "without abatement or account for premiums heretofore or hereafter paid by me on account of that policy; and this provision is additional to the devises made in the foregoing will."

In the first place he gives her children the whole policy, share and share alike, and secondly, provides that there shall be no abatement or account for premiums heretofore or hereafter paid.

We think this disposes of the whole matter, and that whatever estate he had in the policy he bequeathed to her children share and share alike, not only what he paid out to keep the policy alive, but what came from his wife at her death under the statutes of descent and distribution.

Therefore, we are of opinion that this alleged set-off can not be maintained against the promissory note which was allowed in favor of his wife's estate.

Finding no error in the judgment of the common pleas court, it will be affirmed without penalty and at the costs of the plaintiff in error.

*C. W. McClery,* for plaintiff.

*C. D. Martin, M. A. Daugherty* and *George E. Martin,* for defendants.